IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PRESTON ALBRITTON, et al.,      )
      )
      Plaintiffs,      )
      )      Case No.  10 C 7581
      v.      )
      )
VILLAGE OF DOLTON, et al.,      )
      )
      Defendants.      )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendants' motion to dismiss Plaintiffs' Second Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  For the following reasons, the

Court grants in part with prejudice, grants in part without prejudice, and denies in part

Defendants' motion.

## INTRODUCTION

Ten Village of Dolton police officers ("Plaintiffs") bring this civil rights lawsuit against

Defendants Village of Dolton ("Village"), Gail Towers[2] ("Towers"), and Village of Dolton

Board of Trustees members Ronnie Lewis, James T. Jefferson, Garry Lambert, Willie L. Lowe,

---

[1]  When Defendants filed their motion to dismiss, Plaintiffs' First Amended Complaint
was the operative complaint.  After Defendants filed their motion, the Court granted Plaintiffs
leave to file a Second Amended Complaint ("SAC"). (R. 69, 5/23/11 Minute Entry.)  The only
difference between Plaintiffs' First Amended Complaint and the SAC is the joinder of Dolton
Police Officer Kevin Rene as a plaintiff.  Because this difference did not change the substance of
the complaint, it had no impact on the briefing on Defendants' motion to dismiss.  The Court
considers Defendants' motion to dismiss as pertaining to the operative complaint, the SAC.

[2]  For the relevant time period, Towers was a commissioner and secretary of the Village
of Dolton Board of Fire and Police Commissioners.  (SAC ¶ 12.)  Plaintiffs bring this suit
against Towers in her individual capacity, and as an agent of the Village of Dolton.  (*Id.*)

Samalla H. McClellan and Eva M. Nicholson (collectively, "Trustees")[3]. (R. 73, Second

Amended Complaint ("SAC").)  In their Complaint, Plaintiffs claim that Defendants (i) violated

their rights to equal protection and free association under 42 U.S.C. § 1983 (Counts I & IV), (ii)

deprived them of substantive due process under 42 U.S.C. § 1983 (Count II), and (iii) conspired

to interfere with their civil rights under 42 U.S.C. § 1985 (Count III).  Plaintiffs also bring a

*Monell* policy claim against the Village (Count V), and common law claims of conspiracy

(Count VI) and fraud (Count VII).

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a

claim upon which relief may be granted."  *Hallinan v. Fraternal Order of Police of Chicago

Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).  "The issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

*AnchorBank, FSB v. Hofer*, 649 F.3d 610 (7th Cir. 2011) (internal quotation and citation

omitted).  Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

As the Seventh Circuit has explained, this "[r]ule reflects a liberal notice pleading

regime, which is intended to 'focus litigation on the merits of a claim' rather than on

technicalities[.]"  *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v.

Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).  The short and plain

statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the

grounds upon which it rests."  *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167

---

[3]  Plaintiffs sue the Trustees in their individual and official capacities.  (*Id*. ¶ 13.)

L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80

(1957)).  Under the federal notice pleading standards, a plaintiff's "factual allegations must be

enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.  Put

differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting

*Twombly,* 550 U.S. at 570).  "[W]hen ruling on a defendant's motion to dismiss, a judge must

accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551

U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Vance v. Rumsfeld,* – F.3d – , 2011 WL

3437511, at \*9 (7th Cir. Aug. 8, 2011) (courts accept factual allegations as true and draw all

reasonable inferences in plaintiff's favor in a Rule 12(b)(6) proceeding).

## BACKGROUND[4]

At some point prior to October 13, 2007, Defendants Village of Dolton and the Trustees

posted a notice that the Village would be offering a promotional examination for police sergeant

on October 13, 2007.  (SAC ¶ 32.)  Plaintiffs met all of the requirements to sit for the exam, and

registered to take it.  (*Id*. ¶ 33.)  On October 13, 2007, Plaintiffs and other similarly situated

applicants took the written portion of the sergeant's promotional examination.  (*Id*. ¶ 47.)  Unlike

Plaintiffs, however, two of the other "similarly situated applicants" – Dolton Police Officers

Robert Fox and Curtis Rempson – actively participated in the Cook County Democratic Party

and made campaign donations to "Citizens to Re-Elect William 'Bill' Shaw"(the then-mayor of

Dolton) and "Citizens to Re-Elect Robert 'Bob' Shaw" (the mayor's twin brother, who the

mayor appointed to be the Inspector General of Dolton) in the several months leading up to the

---

[4]  The following facts are taken from Plaintiffs' Second Amended Complaint.

sergeant's examination.[5]  (*Id.* ¶¶ 34-42).

Resource Management Associates proctored and graded the examination.  (*Id.* ¶ 47.) Pursuant to Chapter III, Section (C)(a) of the Village of Dolton Board of Fire and Police Commissioners Rules and Regulations, an applicant needed to score a minimum of seventy (70) points to pass the written portion of the exam and advance to oral interviews, absent the Village of Dolton or the Board of Fire and Police Commissioners using a "grading curve."  (*Id.* ¶ 48.) According to the results Resource Management Associates provided to Defendant Towers, Robert Fox and Curtis Rempson both scored below 70 on the exam, receiving scores of 63 and 60, respectively.  (*Id.* ¶ 49.)  Plaintiffs allege, upon information and belief, that Mayor Shaw asked Defendant Towers to change Fox and Rempson's test scores and to falsify a 'Tentative Eligibility List.'  (*Id.* ¶ 51.)  Plaintiffs further allege that Defendant Towers complied with the mayor's request, adding twenty (20) points to Fox and Rempson's written test scores so that they would appear to have earned the highest and third-highest scores on the examination.  (*Id.* ¶ 52.)

Each of the Plaintiffs scored above 60 on the written portion of the promotional examination, and received scores higher than Fox and/or Rempson.  (*Id.* ¶ 55.)  Nevertheless, Defendants refused to allow eight of the Plaintiffs to continue to the oral interview.  (*Id.* ¶ 56.)

Following the oral interviews, on or about December 5, 2007, Defendants Towers and the Village of Dolton produced a Tentative Eligibility List that ranked Fox first.  (*Id.* ¶ 53.) Rempson ranked second on that list.  (*Id.*)  Plaintiffs claim that Defendants Towers and the Village of Dolton fabricated that list.  (*Id.*)  At the time (i.e, in 2007), a minimum of four

---

[5]  Plaintiffs actively chose not to associate with the Cook County Democratic Party, or to make political donations to Mayor Bill Shaw or Inspector General Bob Shaw.  (*Id.* ¶ 45.)

commissioners on the Village of Dolton Board of Fire and Police Commissioners needed to sign the Village's promotional eligibility list in order for it to be valid. (*Id*. ¶ 58.) Plaintiffs allege that the Board of Fire and Police Commissioners never met to approve the December 5, 2007 Tentative Eligibility List, and that at least three of the four commissioners' signatures on the list were forged. (*Id*. ¶¶ 59, 60.)

Defendants Towers and the Village of Dolton posted a 'Final Eligibility List' on or about December 21, 2007. (*Id*. ¶ 61.) That list factored in "Seniority Points" and "Military Points." (*Id*.) Fox ranked first on the Final Eligibility List, and Rempson ranked fourth. (*Id*.) Plaintiffs claim that Defendants Towers and the Village of Dolton fabricated that list, too, and that the commissioners' signatures on that list are photocopies of the (forged) signatures found on the December 5, 2007 Tentative Eligibility List. (*Id*. ¶ 62.) According to Plaintiffs, the Village of Dolton Board of Fire and Police Commissioners did not hold an official meeting on either December 5 or December 21, 2007 to approve the promotional lists. (*Id*. ¶ 63.)

Defendants promoted Robert Fox to sergeant on or about December 31, 2007. (*Id*. ¶ 65.) The following week, Defendants promoted Fox to the position of Chief of Police. (*Id*. ¶ 66.) Plaintiffs allege that Defendants knew Fox's true score of 63 when they voted to promote him. (*Id*.) On or about March 15, 2008, Defendants promoted Rempson to the rank of sergeant. (*Id*. ¶ 67.) Plaintiffs allege that Defendants knew Rempson's true score of 60 when they voted to promote him. (*Id*.)

Plaintiffs claim that Defendants refused to promote Plaintiffs because Plaintiffs chose not

5

to associate with, or donate to, the Cook County Democratic Party. (*Id*. ¶ 69.)[6] Plaintiffs also

claim that Defendants lowered Plaintiff Kevin Rene's score on the written examination from

seventy-two (72) to seventy (70) without justification before they posted the Tentative Eligibility

List. (*Id*. ¶ 71.) Defendants never promoted Plaintiff Rene. (*Id*.)

Plaintiffs submit that Chapter III, Section (A)(7) of the Village of Dolton Board of Fire

and Police Commissioners Rules and Regulations expressly prohibits "any other board or

tribunal of any kind or description" from reviewing the grading of the promotional exams. (*Id*. ¶

72.) Plaintiffs further claim that Defendants fabricated the Tentative Eligibility List and the

Final Eligibility List pursuant to a custom, policy and practice of fabricating eligibility lists to

facilitate the hiring of "favored individuals" over "more qualified candidates, including fire

department eligibility lists in 2005 and 2006." (*Id*. ¶ 74.)

## ANALYSIS

On March 31, 2011, Defendants Village of Dolton and the Trustees filed a motion to

dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6). (R. 53, Defs.'

Mot. to Dismiss.) The Court granted Defendant Towers's motion to adopt that motion to dismiss

on April 6, 2011. (R. 60, 4/6/11 Minute Entry.)[7] In their motion, Defendants move to dismiss all

of Plaintiffs' claims with prejudice. Defendants first contend that Plaintiffs lack a good faith

---

[6] Defendants did, in fact, promote Plaintiff Preston Allbritton to the rank of sergeant on or about February 1, 2009. (*Id*. ¶ 70.) Plaintiffs complain that Defendants delayed that promotion despite the fact that Plaintiff Albritton received a higher score on the written examination than either Fox or Rempson. (*Id*.)

[7] Defendant Towers subsequently filed an answer to Plaintiffs' Second Amended Complaint. (R. 76.) Because Towers's answer asks the Court to dismiss each count in the Complaint, the Court will assume that Towers filed that answer in error and wishes to maintain her adoption of the other Defendants' motion to dismiss the Complaint.

basis to sue the Trustees, and that Plaintiffs have not alleged the Trustees' personal involvement

in the alleged misconduct as required under § 1983.  Defendants next submit that Plaintiffs'

substantive due process claim must fail because the alleged violations also implicate an explicit

constitutional amendment – i.e., First Amendment and the equal protection clause of the

Fourteenth Amendment.  Third, Defendants submit that Plaintiffs' First Amendment claim fails

because they have not established a *prima facie* case of discrimination based on political

(non)affiliation.  Fourth, Defendants argue that Plaintiffs' conspiracy claim must fail because

Seventh Circuit law does not recognize a cause of action under Section 1985(3) for non-racial,

political conspiracies.  Fifth, Defendants assert that Plaintiffs' equal protection claim fails

because Plaintiffs do not allege that they are members of a protected class.  Because all of

Plaintiffs' individual claims fail, Defendants argue, the related *Monell* claim against the Village

of Dolton must also fail.  Finally, Defendants ask the Court to reject Plaintiffs' state law claims.

Defendants contend that Plaintiffs fail to satisfy the heightened Rule 9 pleading standard in their

state law fraud claim, and that Plaintiffs' conspiracy claim, which is predicated on Plaintiffs'

fraud claim, must accordingly fail.

I.      **The Complaint Sufficiently Alleges Personal Involvement for the Members of the Board of Trustees**

"[I]ndividual liability under § 1983 requires 'personal involvement in the alleged

constitutional deprivation.'"  *Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010) (quoting

*Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003)); *Brooks v. Ross*, 578 F.3d 574, 580

(7th Cir. 2009).  As the Seventh Circuit instructs, "Section 1983 creates a cause of action based

on personal liability and predicated upon fault; thus, liability does not attach unless the

individual defendant caused or participated in a constitutional deprivation."  *Vance v. Peters*, 97

F.3d 987, 991 (7th Cir. 1996); *see also Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions.") (citations omitted).  Put another way, for an individual to be liable under Section 1983, he or she must have personal involvement in the decision-making allegedly amounting to a violation of the plaintiff's constitutional rights. *Palmer*, 327 F.3d at 594.  Thus, in order for the members of the Board of Trustees to be liable under Section 1983, Plaintiffs  must allege, at the very least, that they "acquiesced in some demonstrable way to the alleged constitutional deprivation." *Id.*

Here, Plaintiffs allege that "[p]rior to October 13, 2007," all Defendants – including the Board – "individually, jointly and in concert conceived a scheme whereby they would deceive Plaintiffs and achieve an illegal objective, namely manipulating the test results of a municipal promotional examination for the purposes of promoting [Fox and Rempson] to sergeant and chief of police rather than Plaintiffs."  (*Id.* ¶ 46.)  In order to accomplish that scheme, Plaintiffs allege that all Defendants (again, including the Board) "voted to promote Robert Fox to the position of Chief of Police despite knowing that he received a score of 63 and lower than Plaintiffs on the written portion of the sergeant's promotional examination."  (*Id.* ¶ 66.)  Plaintiffs make a similar allegation about the Defendants' promotion of Rempson.  (*Id.* ¶ 67.)  Thus, Plaintiffs implicate the individual Trustees as knowledgeable of, and parties to, the allegedly unlawful and politically-motivated promotions of Fox and Rempson.  While Plaintiffs allege that Defendant Towers manipulated Fox's and Rempson's written test results (SAC ¶ 52), that Defendants Towers and the Village of Dolton produced a fabricated "Tentative Eligibility List" ranking Fox and Rempson as first and second, respectively (*id.* ¶ 53), and that Defendants

Towers and the Village of Dolton posted a fabricated "Final Eligibility List" that ranked Fox

first and Rempson fourth (*id*. ¶ 61), Plaintiffs have also sufficiently pleaded the Trustees' role in

the alleged constitutional deprivation of Plaintiffs' rights.

Defendants argue that the Village of Dolton's Board of Fire and Police Commissioners

maintains sole responsibility over police department promotions, and submit for the Court's

review the relevant portions of the Dolton Municipal Code that were in effect at the time of the

challenged conduct. (R. 67, Defs.' Reply Brief at 2, citing 65 ILCS 5/10-2.1-1.5.) Plaintiffs

contend that the Board of Fire and Police Commissioners "does not promote police officers," but

rather, "creates resolutions to promote officers for a vote by the Board of Trustees." (R. 61, Pls.'

Resp. Brief at 3.) "It is the individual trustees," Plaintiffs submit, "who vote collectively to

promote police officers." (*Id*. at 4.) Although Defendants' proffered Code section does state

that it is the Board of Fire and Police Commissioners' duty to "appoint all full-time members and

officers of the regular Police Department," *see* R. 67-1, Ex. A. to Defs.' Reply Brief at 3, this

does not necessarily contradict Plaintiffs' description of the promotion process and the Board of

Trustees' role in that process. Given the information presented by the parties, and viewing the

allegations in the light most favorable to Plaintiffs as required in a Rule 12(b)(6) motion, the

Court denies Defendants' motion to dismiss the Trustees in their individual capacities.

The Court grants Defendants' unopposed motion to dismiss the Trustees in their official

capacities. Because Plaintiffs' claims against the members of the Board of Trustees in their

official capacities are treated as claims against the Village of Dolton, *see Walker v. Sheahan*, 526

F.3d 973, 977 (7th Cir. 2008), and the Village of Dolton is a named defendant in this case, suing

the Trustees in their official capacities is redundant.

**II.     The Court Grants Defendants' Motion to Dismiss Plaintiffs' Substantive Due Process Claim**

"Substantive due process is admittedly an 'amorphous' concept." *Bettendorf v. St. Croix Cnty.*, 631 F.3d 421, 426 (7th Cir. 2011) (quotation omitted).  The scope of substantive due process is very limited and protects plaintiffs only against arbitrary government action that "shocks the conscience." *Montgomery v. Stefaniak*, 410 F.3d 933, 939 (7th Cir. 2005) (quoting *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005)); *see also Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952).  "[O]nly the most egregious official conduct is arbitrary in the constitutional sense," and plaintiffs bringing due process claims will be successful only where there is "an extraordinary departure from established norms." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (internal quotation marks omitted); *see also Dunn v. Fairfield Cmty. High Sch. Dist. No. 225*, 158 F.3d 962, 966 (7th Cir. 1998)).

In their substantive due process claim, Plaintiffs allege that Defendants Towers's and the Village of Dolton's manipulation of Fox and Rempson's test scores, and all Defendants' conduct related thereto, "shocks the conscience" and constitutes a deprivation of their constitutional rights to equal protection and free association.  (SAC ¶ 94.)  Defendants argue that Plaintiffs' substantive due process claim fails as a matter of law because the First Amendment and the Fourteenth Amendment equal protection clause each provide an "explicit textual source of constitutional protection" for the alleged conduct. *See Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (2009); *Eby-Brown Co. v. Wisc. Dep't of Agric.*, 295 F.3d 749, 754 (7th Cir. 2002).  Plaintiffs' response, that "the Equal Protection Clause is more ambiguous [than the typical Fourth Amendment claims

that courts consider under this framework] and deserves separate analysis," cites no authority and is not persuasive. (R. 61, Pls.' Resp. at 6.)

The Supreme Court has repeatedly held that where a particular "Amendment provides an explicit textual source of constitutional protection against [a particular sort of government behavior], that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *see also United States v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) ("if a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under [that] standard"). Seventh Circuit law on this issue is similarly clear. *See Hernandez ex rel. Hernandez v. Foster*, – F.3d – , 2011 WL 3802667, at *8 (7th Cir. Aug. 26, 2011) (quoting *Doe v. Heck*, 327 F.3d 492, 518 n. 23 (7th Cir. 2003) ("[S]ubstantive due process may not be called upon when a specific constitutional provision . . . protects the right allegedly infringed upon." ); *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1017-18 (7th Cir. 2000). Plaintiffs do not identify how their substantive due process claim is distinct from their claims under the First and Fourteenth Amendments.

Furthermore, "[i]ntrusion upon a cognizable property interest is a threshold prerequisite to a substantive due process claim." *Khan v. Bland*, 630 F.3d 519, 535 (7th Cir. 2010) (quoting *Gen. Auto Serv. Station v. City of Chi.*, 526 F.3d 991, 1002 (7th Cir. 2008) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'")). "[T]he lack of a protected property interest is fatal to a substantive due process claim." *Id*. Plaintiffs do not contend that the right to a promotion is a

11

"protected property interest" to satisfy the substantive due process inquiry, and the case law overwhelmingly indicates otherwise. *See Horstmann v. St. Clair Cnty., Ill.*, 295 Fed.Appx. 61 (7th Cir. 2008) ("Employment rights are state-created rights, and a public employee's interest in continued employment does not rise to the level of a "fundamental" right protected by substantive due process.") (collecting cases); *Moore v. Muncie Police & Fire Merit Comm'n*, 312 F.3d 322, 327 (7th Cir. 2002) ("We have also previously held that an employee has no property interest in a *prospective* promotion, even when placed on an eligibility or ranking list.") (collecting cases); *Bigby v. City of Chicago*, 766 F.2d 1053, 1057 (7th Cir. 1985) (citing Illinois case law that holds that "the promotion of a patrolman to sergeant is one of discretion," so that the plaintiff "had no vested right to promotion.").

For all these reasons, the Court grants with prejudice Defendants' motion to dismiss Plaintiffs' substantive due process claim.

## III.     Plaintiffs Satisfactorily Plead Their First Amendment Claim

"To establish a *prima facie* First Amendment claim, public employees must present evidence that (1) their speech was constitutionally protected; (2) they suffered a deprivation likely to deter free speech; and (3) their speech was the but-for cause of the employer's actions." *Delapaz v. Richardson*, 634 F.3d 895, 900 (7th Cir. 2011) (citations omitted). "[T]to demonstrate causation in this context, plaintiffs must show that the defendant knew of their party affiliation." *Id*. (citing *Gunville v. Walker*, 583 F.3d 979, 984 (7th Cir. 2009)). *See also Zerante v. DeLuca*, 555 F.3d 582, 585 (7th Cir. 2009) (threshold question is whether defendants knew of political activities); *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004) (explaining that it is not enough to show that defendants know of the chosen individual's political involvement, because

12

"defendants still must have wanted to favor [the chosen individual over the plaintiff] because of his political involvement," and thus must have known of his specific political affiliation). Absent special circumstances not alleged here, "the First Amendment prohibits government employers from taking most employees' political views into consideration when making job decisions." *Moss v. Martin*, 614 F.3d 707, 711 (7th Cir. 2010). *See also Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (holding that a public employee may not be promoted because of his or her political beliefs unless political loyalty is an acceptable prerequisite for the job).

Defendants concede that Plaintiffs "have arguably alleged the first and second elements of the required test" (R. 53, Defs.' Mot. to Dismiss at 8), and indeed, political nonaffiliation is a right protected under the first amendment. *See Hermes v. Hein*, 742 F.2d 350, 354 n. 3 (7th Cir. 1984) (citing *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)); *see also Branti v. Finkel*, 445 U.S. 507, 517, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980). Defendants contend, however, that Plaintiffs fail to satisfactorily allege the "but-for" causation. (R. 53, Defs.' Mot. to Dismiss at 8.) The Court disagrees. The entire thrust of Plaintiffs' Complaint is that Defendants discriminated against Plaintiffs because of their non-affiliation with the Cook County Democratic Party. Whether Plaintiffs will meet their burden of proof is beyond the scope of a Rule 12(b)(6) analysis – what matters at this juncture is whether Plaintiffs have stated a plausible claim. Finding that they have, the Court denies Defendants' motion to dismiss Plaintiffs' First Amendment claim.

**IV.     Plaintiff's Conspiracy Claim Under § 1985(3) Fails**

In Count III of the Second Amended Complaint, Plaintiffs allege that all Defendants

conspired to deprive them of their First and Fourteenth Amendment rights, in violation of 42

U.S.C. § 1985(3).  As Defendants correctly note, Seventh Circuit law bars claims under §

1985(3) for nonracial political conspiracies.  *See Kyle v. Morton High Sch.*, 144 F.3d 448, 457

(7th Cir. 1998) (absent any allegation that conspiracy was motivated by racial or other class-

based animus, political retaliation claim fails); *Bowman v. City of Franklin*, 980 F.2d 1104, 1109

(7th Cir. 1992), *cert. denied*, 113 S.Ct. 2417 (1993) ("§ 1985(3) does not reach nonracial

political conspiracies") (quoting *Grimes v. Smith*, 776 F.2d 1359, 1366 (7th Cir. 1985).  *See also*

*Hubble v. Voorhees*, 311 Fed.Appx. 920, 923 (7th Cir. 2009) (declining appellant's request that

the court "reconsider [its] precedent and reinterpret [§ 1985(3)]" to broaden the statute to cover

alleged victims of nonracial political conspiracies).  *Cf. Volk v. Coler*, 845 F.2d 1422, 1434 (7th

Cir. 1988) ("§ 1985(3) extends beyond conspiracies to discriminate against persons based on

race to conspiracies to discriminate against persons based on sex, religion, ethnicity or political

loyalty.") (collecting cases).  Because Plaintiffs do not allege any racial animus in their

Complaint, the Court grants Defendants' motion to dismiss Plaintiffs' § 1985(3) claim without

prejudice.

**V.     Plaintiffs' Equal Protection Claim Fails Under *Engquist v. Oregon Department of Agriculture***

Plaintiffs claim that Defendants deprived them of their Fourteenth Amendment right to

equal protection by refusing to promote them while promoting similarly situated candidates Fox

and Rempson on the basis of their political affiliation.  Specifically, Plaintiffs contend they were

all qualified to take the written exam, and that all Plaintiffs scored better than Rempson and nine

Plaintiffs scored better than Fox, and yet, Defendants permitted Fox and Rempson to pass the

sergeant's exam and secure promotions because of Fox and Rempson's association with the

Cook County Democratic Party.  Defendants characterize Plaintiffs' equal protection claim as

"an effort to restate their First Amendment political (non) affiliation claim under a different

constitutional provision" (R. 53, Defs.' Mot. to Dismiss at 12), and argue that Plaintiffs' equal

protection claim must fail because courts do not recognize a heightened protection for political

non-affiliation, and because a class-of-one claim is foreclosed under the Supreme Court's

decision in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008).  Furthermore,

Defendants contend, because Plaintiffs have not alleged that they are members of a protected

class, their claim necessarily becomes a rational basis / class-of-one claim.

      The equal protection clause of the Fourteenth Amendment commands that no state shall

"deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST.

amend. XIV, § 1.  "All equal protection claims, regardless of the size of the disadvantaged class,

are based on the principle that, under 'like circumstances and conditions,' people must be treated

alike, unless there is a rational reason for treating them differently."  *LaBella Winnetka v. Vill. of*

*Winnetka*, 628 F.3d 937, 941-42 (7th Cir. 2010) (citing *Engquist v. Oregon Dep't of Agric.*, 553

U.S. 591, 601-02, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008) (quoting *Hayes v. Missouri*, 120 U.S.

68, 71-72, 7 S.Ct. 350, 30 L.Ed. 578 (1887))).  To succeed on a class of one claim under the

equal protection clause, a plaintiff must thus establish that (1) he has been intentionally treated

differently than others similarly situated, and (2) there is no rational basis for the difference in

treatment.  *Id*. at 942; *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) (citations

omitted).

"To be considered 'similarly situated,' a plaintiff and his comparators (those alleged to have been treated more favorably) must be identical or directly comparable in all material respects. *LaBella*, 628 F.3d at 942 (citing *Reget*, 595 F.3d at 695). "The 'similarly situated' test is a flexible, commonsense inquiry whose requirements vary from case to case." *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007) (citations omitted). "Its purpose is to determine whether there are enough common factors between a plaintiff and a comparator – and few enough confounding ones – to allow for a meaningful comparison in order to divine whether discrimination was at play." *Id*. As to the second prong, "[a] state or municipal statute survives rational basis scrutiny 'if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 946 (7th Cir. 2009) (quoting *City of Chicago v. Shalala*, 189 F.3d 598, 605 (7th Cir. 1999) (internal quotation marks omitted)). "This is an onerous test to overcome, as 'the burden is upon the challenging party to eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id*. (citation and internal quotation marks omitted).

Plaintiffs allege they were similarly situated to Fox and Rempson when they sat to take the sergeant's promotional examination. They then claim that Defendants treated Fox and Rempson differently – by manipulating their test scores, positioning them for promotion, and, ultimately, promoting them – because of their political affiliation with the Cook County Democratic Party, and treated Plaintiffs unfavorably because of their non-affiliation with the same. Plaintiffs dispute any rational basis on the part of the Defendants for making those decisions. Defendants do not address the "rational basis" argument. Rather, Defendants contend that the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture* forecloses

16

equal protection class-of-one claims in the public employment context. In that case, the

Supreme Court stated, "[o]ur traditional view of the core concern of the Equal Protection Clause

as a shield against arbitrary classifications, combined with unique considerations applicable

when the government acts as employer as opposed to sovereign, lead us to conclude that the

class-of-one theory of equal protection does not apply in the public employment context." As

the Seventh Circuit has explained, "*Engquist* held that class-of-one claims cannot be based on

the highly discretionary and individualized sorts of decisions that public employers must make

about their employees." *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010).

Plaintiffs do not appear to dispute that they bring a class-of-one claim.[8] Rather, they

argue that their claim does not fall under the types of public employment claims the Supreme

Court envisioned in *Engquist*. Plaintiffs cite no authority to override the Supreme Court's clear

holding in *Engquist* that "the class-of-one theory of equal protection has no application in the

public employment context," *Engquist*, 553 U.S. at 607, and instead align themselves with the

*Engquist* Court's dissent, which preferred that "the Court [] use a scalpel rather than a meataxe."

*Id*. at 610 (dissent). That alliance does not prevail. The one case Plaintiffs do cite to purportedly

support their proposition is an unpublished district court case that involves a police officer's

conduct in the course of issuing parking tickets. *See Geinosky v. City of Chicago*, Case No. 10 C

1438, 2011 WL 686815 (N.D. Ill. Feb. 17, 2011). Even if that case was binding on this Court –

and it is not – it does not involve a public employment situation and is thus inapposite.

---

[8]  "Whether the complaint alleges a class of one or of five is of no consequence because
we conclude that the number of individuals in a class is immaterial for equal protection
analysis." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d
1060 (2000).

Because Plaintiffs' Second Amended Complaint and their arguments in support thereof are not the model of clarity, the Court notes that *Engquist* did not bar all equal protection claims against public employers. *See Engquist*, 553 U.S. at 605 ("Of course, that is not to say that the Equal Protection Clause, like other constitutional provisions, does not apply to public employers. Indeed, our cases make clear that the Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently.") (collecting cases). To the extent Plaintiffs bring a class-based equal protection claim – and their response brief suggests they might, *see* R. 61 at 12 – this claim would not be barred by *Engquist*. The Court grants Defendants' motion to dismiss Plaintiffs' equal protection claim with prejudice to the extent they plead a class-of-one claim, and without prejudice to the extent Plaintiffs seek to bring a class-based claim.

## VI.     Plaintiffs State A *Monell* Claim

In order to bring a claim under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), Plaintiffs must allege that (i) the Village of Dolton maintains an express policy that, when enforced, causes a constitutional deprivation; (ii) the discrimination / constitutional violation was part of a widespread practice or policy which, although not explicitly authorized, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (iii) someone with final policymaking authority for the Village made discriminatory decisions. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). "In applying the different theories of liability recognized under *Monell*," Plaintiffs must "show that their injuries were caused by the policies or practices complained of." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2010). Here, Plaintiffs allege that the Village of

18

Dolton employs a "custom, policy and practice . . to disregard its testing procedures in lieu of appointing favored candidates for civil service positions." (SAC ¶ 120.) Plaintiffs further allege that the Village of Dolton's "custom, policy and practice" harmed Plaintiffs. (*Id.*) The Court thus denies Defendants' motion to dismiss the *Monell* claim.

## VII. Plaintiffs Do Not Sufficiently Plead Their State Law Claims

"To state a fraud claim under Illinois law, a plaintiff must allege that the defendant: (i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." *Bank of Am., N.A. v. Shelbourne Dev. Grp., Inc.*, 732 F. Supp. 2d 809, 826 (N.D. Ill. 2010) (quoting *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 766 (7th Cir. 2010)). Rule 9(b) imposes a higher pleading standard for fraud claims – specifically, it requires plaintiffs to state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). The Rule "requires 'the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotations omitted). This requirement "ordinarily requires describing the 'who, what, when, where, and how' of the fraud.'" *AnchorBank*, 649 F.3d 610 (citing *Pirelli Armstrong Tire Corp. Retiree Md. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011)).

In their Complaint, Plaintiffs make vague and non-specific allegations regarding the Defendants' false representations and fraudulent conduct. Furthermore, Plaintiffs use boilerplate language to recite the elements of a fraud claim under Illinois law, without explaining what

"reliance" the Defendants intended to elicit from Plaintiffs, and what injuries Plaintiffs suffered as a result of that reliance. Plaintiffs do not clarify these points in their response brief. The Court thus grants Defendants' motion to dismiss the state law fraud claim without prejudice. Because Plaintiffs' state law conspiracy claim is predicated on their fraud claim, the Court also grants Defendants' motion to dismiss the civil conspiracy claim without prejudice. *See De Bouse v. Bayer AG*, 385 Ill. App. 3d 812, 829, 324 Ill.Dec. 806, 896 N.E.2d 882 (Ill. App, Ct. 2008), overruled on other grounds, 235 Ill.2d 544, 337 Ill.Dec. 186, 922 N.E.2d 309 (Ill. 2009) (holding that "civil conspiracy is not an independent tort but must be premised on the commission of an underlying independent wrong."); *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936, 281 Ill.Dec. 215, 803 N.E.2d 619, 626 (Ill. App. Ct. 2004) (holding that civil conspiracy is not an independent tort: if a "plaintiff fails to state an independent cause of action underlying his conspiracy allegations, the claim for conspiracy also fails.").

## CONCLUSION

For the reasons discussed above, the Court grants in part with prejudice, grants in part without prejudice, and denies in part Defendants' motion to dismiss Plaintiffs' Complaint under Rule 12(b)(6). The Court grants Plaintiffs leave to file a Third Amended Complaint in accordance with this Order by no later than October 12, 2011. Defendants must answer or otherwise plead by no later than October 26, 2011.

**Date:** September 28, 2011

ENTERED

Amy J. St. E

**AMY J. ST EYE**
**United States District Court Judge**