**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| PRESTON ALLBRITTON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 10 C 7581 |
| v. | ) | |
| | ) | |
| VILLAGE OF DOLTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

The Court previously granted in part, and denied in part, Defendants' motion to dismiss

the Second Amended Complaint. Plaintiffs have since amended their pleading, and Defendants

now seek to dismiss Counts I, IV, and V of the Third Amended Complaint. For the reasons

explained below, the Court grants Defendants' motion as to Counts IV and V, and accordingly

dismisses Counts IV and V, but denies Defendants' motion as to Count I.

**INTRODUCTION**

Ten Village of Dolton, Illinois police officers (collectively, "Plaintiffs")[1] bring the

present civil rights lawsuit against Defendants Village of Dolton, Illinois ("Village"), Village

employee Gail Towers ("Towers"), and six members of the Village Board of Trustees

(collectively, "Trustees").[2] (R. 81, Third Am. Compl. ¶¶ 1-13.) In their Third Amended

---

[1]Plaintiffs are Preston Allbritton, Michelle Archer, Steven Biddle, Bryan Caridine, David Crudup, Stephen Curry, John Frasure, Charles Hampton, Darryl Hope, and Kevin Rene. (Third Am. Compl. ¶¶ 1-10.)

[2]The Trustees are Ronnie Lewis, James T. Jefferson, Garry Lambert, Willie L. Lowe, Samalla H. McClellan and Eva M. Nicholson. Plaintiffs sue the Trustees in their individual and official capacities. (*Id*. ¶¶ 1-13.)

Complaint, Plaintiffs claim that Defendants violated their constitutional federal rights to equal protection and free association, in violation of 42 U.S.C. § 1983 (Counts I and II.)  Plaintiffs also bring a *Monell* policy claim against the Village (Count III), and state common law claims of fraud (Count IV), and conspiracy (Count V).

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted."  *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *AnchorBank, FSB v. Hofer*, 649 F.3d 610 (7th Cir. 2011) (internal quotation and citation omitted).  Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

As the Seventh Circuit has explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities[.]"  *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)).  The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly,* 550 U.S. at 555.  Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting

*Twombly*, 550 U.S. at 570). "[W]hen ruling on a defendant's motion to dismiss, a judge must

accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551

U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *see also Graczyk v. West Pub. Co.*, 660

F.3d 275, 279 (7th Cir. 2011) (stating in the context of a motion to dismiss, that the court will

"construe the complaint in the light most favorable to the plaintiff, accept well-pleaded facts as

true, and draw all inferences in the plaintiff's favor").

## BACKGROUND

Plaintiffs allege the following facts in the Third Amended Complaint. At some point

prior to October 13, 2007, Defendants the Village and the Trustees posted a notice that the

Village intended to offer a promotional examination for police sergeant on October 13, 2007.

(Third Am. Compl. ¶ 32.) Plaintiffs met all of the requirements to sit for the exam, and

registered to take the exam. (*Id.* ¶ 33.) On October 13, 2007, Plaintiffs and other similarly

situated applicants took the written portion of the sergeant's promotional examination. (*Id.* ¶

47.)

Unlike Plaintiffs, however, two of the other "similarly situated applicants" – Village

Police Officers Robert Fox and Curtis Rempson – actively participated in the Cook County

Democratic Party and made campaign donations to "Citizens to Re-Elect William 'Bill'

Shaw"(the then-mayor of the Village) and "Citizens to Re-Elect Robert 'Bob' Shaw" (the

mayor's twin brother, who the mayor appointed to be the Inspector General of the Village) in the

several months leading up to the sergeant's examination. (*Id.* ¶¶ 34-42.) Between March 2006

and August 2007, Fox donated $3,700 to the mayor's reelection campaign. (*Id.* ¶¶ 35-42, 43

(additional donations in 2008)). In contrast, Plaintiffs "actively chose not to associate with the Cook County Democratic Party or to give political contributions [to the mayor]." (*Id.* ¶ 45.)

Resource Management Associates proctored and graded the examination. (*Id.* ¶ 48.) Pursuant to Chapter III, Section (C)(a) of the Village Board of Fire and Police Commissioners Rules and Regulations, an applicant needed to score a minimum of seventy (70) points to pass the written portion of the exam and advance to oral interviews, absent the Village or the Board of Fire and Police Commissioners using a "grading curve." (*Id.*) According to the results Resource Management Associates provided to Defendant Towers, Robert Fox and Curtis Rempson both scored below 70 on the exam, receiving scores of 63 and 60, respectively. (*Id.* ¶ 49.) Plaintiffs allege, upon information and belief, that Mayor Shaw asked Defendant Towers to change Fox and Rempson's test scores and to falsify a "Tentative Eligibility List." (*Id.* ¶ 51.) Plaintiffs further allege that Defendant Towers complied with the mayor's request, adding twenty (20) points to Fox's and Rempson's written test scores so that they would appear to have earned the highest and third-highest scores on the examination. (*Id.* ¶ 52.)

Each of the Plaintiffs scored above 60 on the written portion of the promotional examination, and received scores higher than Fox and/or Rempson. (*Id.* ¶ 55.) Nevertheless, Defendants refused to allow eight of the Plaintiffs to continue to the oral interview. (*Id.* ¶ 56.)

Following the oral interviews, on or about December 5, 2007, Defendants Towers and the Village produced a Tentative Eligibility List that ranked Fox first. (*Id.* ¶ 53.) Rempson ranked second on that list. (*Id.*) Plaintiffs claim that Defendants Towers and the Village fabricated that list. (*Id.*) At the time (i.e, in 2007), a minimum of four commissioners on the Village Board of Fire and Police Commissioners needed to sign the Village's promotional eligibility list in order

4

for it to be valid.  (*Id*. ¶ 58.)  Plaintiffs allege that the Board of Fire and Police Commissioners never met to approve the December 5, 2007 Tentative Eligibility List, and that at least three of the four commissioners' signatures on the list were forged.  (*Id*. ¶¶ 59, 60.)

Defendants Towers and the Village posted a "Final Eligibility List" on or about December 21, 2007.  (*Id*. ¶ 61.)  That list factored in "Seniority Points" and "Military Points." (*Id*.)  Fox ranked first on the Final Eligibility List, and Rempson ranked fourth.  (*Id*.)  Plaintiffs claim that Defendants Towers and the Village fabricated that list, too, and that the commissioners' signatures on that list are photocopies of the (forged) signatures found on the December 5, 2007 Tentative Eligibility List.  (*Id*. ¶ 62.)  According to Plaintiffs, the Village Board of Fire and Police Commissioners did not hold an official meeting on either December 5 or December 21, 2007 to approve the promotional lists.  (*Id*. ¶ 63.)

Defendants promoted Robert Fox to sergeant on or about December 31, 2007.  (*Id*. ¶ 65.) The following week, Defendants promoted Fox to the position of Chief of Police.  (*Id*. ¶ 66.) Plaintiffs allege that Defendants knew Fox's true score of 63 when they voted to promote him. (*Id*.)  On or about March 15, 2008, Defendants promoted Rempson to the rank of sergeant.  (*Id*. ¶ 67.)  Plaintiffs allege that Defendants knew Rempson's true score of 60 when they voted to promote him.  (*Id*.)

Plaintiffs claim that Defendants refused to promote Plaintiffs because Plaintiffs chose not to associate with, or donate to, the Cook County Democratic Party.[3]  (*Id*. ¶ 91.)  Plaintiffs further

---

[3]Defendants did, in fact, promote Plaintiff Preston Allbritton to the rank of sergeant on or about February 1, 2009.  (*Id*. ¶ 70.)  Plaintiffs complain that Defendants delayed that promotion despite the fact that Plaintiff Allbritton received a higher score on the written examination than either Fox or Rempson.  (*Id*.)

allege that the Village, the Trustees, and Towers voted to promote Fox and Rempson because of their association with the Cook County Democratic Party and/or Mayor Shaw." (*Id.* ¶¶ 34, 69, 91-92.) Plaintiffs also claim that Defendants lowered Plaintiff Kevin Rene's score on the written examination from seventy-two (72) to seventy (70) without justification before they posted the Tentative Eligibility List. (*Id.* ¶ 71.) Defendants never promoted Plaintiff Rene. (*Id.*)

Plaintiffs submit that Chapter III, Section (A)(7) of the Village Board of Fire and Police Commissioners Rules and Regulations expressly prohibits "any other board or tribunal of any kind or description" from reviewing the grading of the promotional exams. (*Id.* ¶ 72.) Plaintiffs further claim that Defendants fabricated the Tentative Eligibility List and the Final Eligibility List pursuant to a custom, policy and practice of fabricating eligibility lists to facilitate the hiring of "favored individuals" over "more qualified candidates, including fire department eligibility lists in 2005 and 2006." (*Id.* ¶ 74.)

## ANALYSIS

Defendants move to dismiss Counts I, IV and V of the Third Amended Complaint. The Court addresses each claim in turn.

## I.  Count I (Equal Protection under 42 U.S.C. § 1983)

In Count I of the Third Amended Complaint, Plaintiffs allege that Defendants deprived Plaintiffs of equal protection of the laws under the Fourteenth Amendment, in violation of 42 U.S.C. § 1983. Plaintiffs allege that they "were part of an identifiable class of candidates for sergeant – they all chose not to affiliate with the Cook County Democratic Party and/or Mayor Shaw." (Third Am. Compl. ¶ 84.) Plaintiffs further allege that Defendants' "refusal to promote Plaintiffs entirety or in a timely manner was due to their membership in the class of candidates

that chose not to affiliate with the Cook County Democratic Party." (*Id.* ¶ 91.) Likewise, according to Plaintiffs, "the Board voted to promote Robert Fox and Curtis Rempson rather than Plaintiffs due to their being members of the class of candidates that refused to affiliate with the Cook County Democratic Party and/or Mayor Shaw." (*Id.* ¶ 92.)

### A.      Legal Standard

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "All equal protection claims, regardless of the size of the disadvantaged class, are based on the principle that, under 'like circumstances and conditions,' people must be treated alike, unless there is a rational reason for treating them differently." *LaBella Winnetka v. Vill. of Winnetka*, 628 F.3d 937, 941-42 (7th Cir. 2010) (citing *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601-02, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) (quoting *Hayes v. Missouri*, 120 U.S. 68, 71-72, 7 S. Ct. 350, 30 L. Ed. 578 (1887))).

Equal protection "most typically reaches state action that treats a person poorly because of the person's race or other suspect classification, such as sex, national origin, religion, political affiliation, among others, . . . or because the person is a member of a group that is the target of irrational government discrimination." *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010) (citing *Engquist*, 553 U.S. 591; *Plyler v. Doe*, 457 U.S. 202, 216-17, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982); *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009)). To state a classification-based equal protection claim, a plaintiff must allege purposeful discrimination on account of her membership in an identifiable group. *See, e.g.*, *Engquist*, 553 U.S. at 605; *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 279, 99 S. Ct. 2282, 60 L. Ed. 2d 870

(1979); *Pirela v. Vill. of N. Aurora*, 966 F. Supp. 661, 667 (N.D. Ill. 1997) (citing *Sims v. Mulcahy*, 902 F.2d 524, 538 (7th Cir. 1990)).

In addition to classification-based equal protection claims, courts recognize equal protection claims proceeding under a so-called "class of one" theory. *See Reget v. City of LaCrosse*, 595 F.3d 691, 695 (7th Cir. 2010) (citing *Engquist*, 553 U.S. 591). To succeed under this theory, a plaintiff must establish that she has been intentionally treated differently than others similarly situated, and there is no rational basis for the difference in treatment. *See Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). The "class-of-one" theory, however, is unavailable in the public employment context. *See Abcarian*, 617 F.3d at 938 (citing *Engquist*, 553 U.S. 591)). Such a claim is a "'poor fit' with employment decisions, which are themselves 'often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify.'" *Id.* (quoting *Engquist*, 553 U.S. at 604-05).

### B.      Analysis

The Court previously dismissed Plaintiffs' equal protection claim as alleged in the Second Amended Complaint, reasoning that Plaintiffs pleaded a "class-of-one" theory that is not actionable following the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture.* In an attempt to cure this pleading defect, Plaintiffs have amended their equal protection claim to allege class-based discrimination, namely that Defendants treated Plaintiffs less favorably "due to their membership in the class of candidates [for sergeant] that chose not to affiliate with the Cook County Democratic Party." (Third Am. Compl. ¶ 91.)

Defendants move to dismiss the amended claim on the basis that "Plaintiffs have failed to define a class, and therefore still maintain a class of one claim" (Defs.' Mem. at 3), and that

Plaintiffs have failed to "plead that Plaintiffs were singled out for disparate treatment and that the Defendants actions were selected for the purpose of causing adverse effects on the Plaintiffs." (*Id.* at 6.) The Court disagrees on both accounts.

Defendants first argue that the allegations in the Third Amended Complaint fail to adequately define a class for purposes of equal protection because "Plaintiffs cannot simply take their allegations and craft a class based on those allegations." (*Id.* at 4.) Defendants explain that Plaintiffs "derive their 'class' from the Defendants' alleged tortuous conduct," and for that reason, Plaintiffs cannot adequately plead a class. (*Id.* at 5 (citing *McDorman v. Smith*, 437 F. Supp. 2d 768, 775 (N.D. Ill. 2008) and *Brown v. City of Chicago*, 573 F. Supp. 1375, 1380 (D.C. Ill. 1983).)

Although the Court does not quibble with Defendants' premise that membership in a class defined by those who are victims of tortuous conduct may not be sufficient to state an equal protection claim, *see McDorman*, 437 F. Supp. 2d at 776, Plaintiffs have not defined their class in that manner. Instead, Plaintiffs define their class based their pre-existing status as individuals who "actively chose not to associate with the Cook County Democratic Party or to give political contributions [to the mayor]." (Third Am. Compl. ¶ 45.) Although Plaintiffs, as a class, may have been victims of Defendants' alleged tortuous conduct, their class definition includes an external political nexus, namely nonaffiliation with certain political forces, that distinguishes it from classes defined exclusively by the tortuous conduct of another. *Cf. McDorman v*, 437 F. Supp. 2d at 775 (victims of specific police misconduct); *Brown*, 573 F. Supp. at 1380 (same).

Alternatively, Defendants argue that even if Plaintiffs adequately pleaded membership in an identifiable class, Plaintiffs "have failed to show that Defendants acted with nefarious purpose

to discriminate against Plaintiffs." (*Id.* at 5.) In its opinion denying Defendants' motion to dismiss Plaintiffs' First Amendment claim pleaded in the Second Amended Complaint, the Court previously held that Plaintiffs had plausibly alleged that their political nonaffiliation was the but-for cause of Defendants' allegedly unlawful actions against them. (R. 79, at 13 (citing, inter alia, *Branti v. Finkel*, 445 U.S. 507, 517, 100 S. Ct. 1287, 1294, 63 L. Ed. 2d 574 (1980); *Hermes v. Hein*, 742 F.2d 350, 354 n.3 (7th Cir. 1984)). The Court explained: "The entire thrust of Plaintiffs' Complaint is that Defendants discriminated against Plaintiffs because of their non-affiliation with the Cook County Democratic Party." (R. 79, at 13.) So too here, where Plaintiffs' alleged non-affiliation forms the basis of their equal protection claim, Plaintiffs have plausibly alleged the element of intent for purposes of surviving a motion to dismiss their equal protection claim.

Accordingly, the Court denies Defendants' motion to dismiss as to Count I.[4]

---

[4]In denying the motion to dismiss, the Court expresses no view on whether a plaintiff may maintain a classification-based equal protection claim on the basis of political patronage in the public workplace. Because neither party has raised or briefed that issue, the Court has assumed that such a claim is viable. In that regard, the Court simply observes that the Supreme Court and the lower courts have developed a significant body of law under the First Amendment that protects against political patronage in the workplace, *see Rutan v. Rep. Party of Ill.,* 497 U.S. 62, 110 S. Ct. 2729, 111 L. Ed. 2d 52 (1990) ("promotion, transfer, recall, and hiring decisions"); *Branti v. Finkel*, 445 U.S. 507, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 372, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976); *accord Musabellie v. Gonzales*, 442 F.3d 991, 994 (7th Cir. 2006) (opining that *Rutan* and *Elrod* limit the political "spoils system"), but have not done so in the equal protection context. *See Lundblad v. Celeste*, 924 F.2d 627, 628 (6th Cir. 1991) ("[T]he Supreme Court has developed principles under the First Amendment prohibiting the hiring and firing of employees on a partisan political basis, but the Court has not developed such principles under the Equal Protection Clause[.]"). Thus, although the First Amendment stands as the primary source of constitutional protection against political patronage in the public workplace, whether it stands as the exclusive source appears to be an open question. *Cf. Pagan v. Calderon*, 448 F.3d 16, 36 (1st Cir. 2006) (dismissing equal protection claim alleging political discrimination in employment, reasoning that the plaintiff's "allegations of political discrimination fit within the contours of the First Amendment").

## II.    Count IV (Fraud)

In Count IV, Plaintiffs assert a claim of state law fraud against Defendant Towers and the Village.[5]  Plaintiffs allege that Defendants fraudulently manipulated the promotional process, and "as a result of their reasonable reliance" on that conduct, Plaintiffs "were denied promotions, failed to seek promotions or challenge the promotions of Robert Fox and Curtis Rempson, denied salary increases, and denied job prospects within the department."  (Third Am. Compl. ¶ 121; *see also id.* ¶¶ 119, 128, 130.)

### A.    Legal Standard

In pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8.  Specifically, Rule 9(b) requires a pleading to state with particularity the circumstances constituting the alleged fraud.  *See* Fed. R. Civ. P. 9(b).  The Rule "requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotation marks omitted).  This requirement "ordinarily requires describing the 'who, what, when, where, and how' of the fraud.'"  *AnchorBank*, 649 F.3d at 615 (citing *Pirelli Armstrong Tire Corp. Retiree Md. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011)).

"To state a fraud claim under Illinois law, a plaintiff must allege that the defendant: (i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii)

---

[5]The Third Amended Complaint additionally names the Trustees as Defendants in Count IV, but Plaintiffs explain that have abandoned any claim of fraud against the Trustees.  (R. 90, Pls.' Resp. at 8.)

intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." *Bank of Am., N.A. v. Shelbourne Dev. Grp., Inc.*, 732 F. Supp. 2d 809, 826 (N.D. Ill. 2010) (quoting *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 766 (7th Cir. 2010)). With regard to the fourth element, Illinois courts require that the injury amount to a "tangible pecuniary loss." *City of Chicago v. Mich. Beach Housing Co-Op*, 297 Ill. App. 3d 317, 323, 696 N.E.2d 804, 231 Ill. Dec. 508 (Ill. App. Ct. 1998) (reasoning that "common-law fraud primarily addresses the invasion of economic interests") (citation omitted).

### B.      Analysis

In this case, Defendants argue that Plaintiffs have failed to adequately plead a cognizable injury that resulted from Defendants' alleged fraud, and therefore have failed to state a claim for fraud under Illinois law. Specifically, Defendants argue that Plaintiffs' claim of fraud fails as a matter of law because "Plaintiffs have no property interest in a promotion." (Defs.' Mot. at 11 (citing *Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir. 1985).) The Court agrees.

Plaintiffs premise their allegations of injury on their failure to attain a promotion to sergeant. Only one position was available, and for that reason, it would be nothing more than an "expression [of] opinion [about a] future probability" to conclude that the promotion would have gone to any particular Plaintiff, let alone any Plaintiff at all. *See Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 851 (Ill. App. Ct. 2009) ("damages may not be predicated on mere speculation, hypothesis, conjecture or whim") (internal quotation marks and citations omitted); *see also City of Chicago v. Mich. Beach Housing Co-op*, 297 Ill. App. 3d 317, 323, 696 N.E.2d 804, 231 Ill. Dec. 508 (Ill. Ct. App. 1998)

Indeed, public "employment decisions are quite often subjective and individualized,

resting on a wide array of factors that are difficult to articulate and quantify." *Engquist*, 553

U.S. at 604. This is especially true in the context of a promotion. *See Moore v. Muncie Police*

*& Fire Merit Comm'n*, 312 F.3d 322, 327 (7th Cir. 2002) ("We have also previously held that an

employee has no property interest in a *prospective* promotion, even when placed on an eligibility

or ranking list.") (collecting cases); *Bigby,* 766 F.2d at 1057 (holding that "the promotion of a

patrolman to sergeant is one of discretion," so that the plaintiff "had no vested right to

promotion") (citing Illinois law).

As applied to this case, Plaintiffs make no plausible allegation that they had any legal

property or otherwise economic interest in a promotion. *See Mich. Beach Housing Co-Op*, 297

Ill. App. 3d 317, 323, 696 N.E.2d 804, 231 Ill. Dec. 508 (Ill. App. Ct. 1998). Nor does the Third

Amended Complaint contain any plausible allegation that Plaintiffs' alleged injury in connection

with the promotion process "is tangible enough . . . to establish a pecuniary loss." *Mich. Beach*

*Housing Co-op*, 297 Ill. App. 3d 317 at 323 (holding that fraudulent misrepresentations that

caused a plaintiff to lose "an opportunity to convert low-income rental housing into cooperative

housing" did not amount to "tangible enough evidence to establish a pecuniary loss"). Under

these circumstances, Plaintiffs have failed to plausibly allege the element of injury. *See*

*Twombly*, 550 U.S. at 555 (stating that a complaint must include sufficient factual allegations "to

raise a right to relief above the speculative level.").

Accordingly, the Court grants Defendants' motion to dismiss Count IV.

**III.    Count V (Conspiracy)**

In Count V, Plaintiffs assert a state law claim of conspiracy to defraud. Under Illinois

law, civil conspiracy is not an independent tort, and thus if a "plaintiff fails to state an

independent cause of action underlying his conspiracy allegations, the claim for conspiracy also fails." *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936, 281 Ill. Dec. 215, 803 N.E.2d 619, 626 (Ill. App. Ct. 2004). In moving to dismiss Count V, Defendants argue just that: "because the claim for common law fraud should be dismissed, the claim for conspiracy to commit [fraud] should also be dismissed." (Defs.' Mot. at 11.) Plaintiffs concede that their conspiracy claim has no independent viability and "would also fail" if the Court dismisses the fraud claim.

Accordingly, because Plaintiffs have failed to state a claim for fraud, they have additionally failed to state a claim for conspiracy to defraud.

## CONCLUSION

For the reasons discussed above, the Court grants Defendants' motion as to Counts IV and V, and accordingly dismisses Counts IV and V, but denies Defendants' motion as to Count I, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Date: January 3, 2012

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**